## John H. Watson v. C. M. Simpson.

In deciding the question as to a man's actual domicil, courts of justice will look to the real facts of the case, and the declarations of a party on that subject made, for the purpose of establishing a fictitious domicil, will be rejected.

APPEAL from the Fourth District Court of New Orleans.

Race & Foster, for plaintiff and appellant.    Singleton & Clack, for defendant.

Merrick, C. J.    There are a great number of witnesses in this case and much conflict of testimony on the single question of domicil.

The conflict does not become so great, however, when we consider the sources of knowledge of the witnesses and that the statements of the defendant himself are evidence on this question, and many New York witnesses have testified positively as to defendant's domicil in New Orleans without ever having seen him there, and upon his statements alone.

It appears that the defendant was a native of the State of New York and that his domicil was in the city of New York, where he did business in 1842 or 1843. He then removed to New Orleans and established himself in business and resided here with his family until his wife died in 1852 or 1853. He then had a family tomb built which cost him $1700, and where the remains of his wife were deposited. He then broke up housekeeping and went to New York, in August 1854, where he remained about two years, without once returning to New Orleans. He had an office there with a sign " C. M. Simpson, New Orleans." He had a letter box at the post-office, but attended principally to the purchase of goods for his New Orleans store.

In April, 1856, he negotiated a lease of a residence in Fifteenth street, New York, but took the lease in the name of J. B. Simpson, avowedly so as not to impair his right to his Louisiana domicil. He bought furniture for this house, some of which he pretended was to be sent to New Orleans. To some he boasted that the furniture in his house cost $10,000, and informed them he was about to get married. He resided at this establishment from that time until he returned to New Orleans the last of May, 1857, after the commencement of this attachment suit, and then even he came here with an intention of selling out. So it appears that he resided continuously in New York city from August, 1854, to the 30th day of May, 1857, with the exception of a period extending from the 12th day of August, 1856, to some day in September, 1856, making probably a month.

It is evident, from the testimony, that during all this time Simpson was alive to the importance of preserving his Louisiana domicil. His large stock of goods were here, and it was important that they should be preserved from attachment from his New York creditors, and it would also be more inconvenient for them to institute suits here than in New York. Hence the deceptions practiced to induce intimate friends there to suppose he was actually residing a part of the time in New Orleans. Some attachments were also sued out against him in New York city in May, 1856, and this accounts for the necessity of keeping the lease and furniture in the name of his brother.

It is evident that in most of his conversations and wherever he had an opportunity to manufacture evidence, Simpson pretended to be a resident of New Or-

43

WATSON
v.
SIMPSON.

leans, whilst during the whole of three years he was absent, he was enjoying all the advantages of a real residence in New York, except voting, and this he seemed to decline merely because it might affect his Louisiana domicil.

The case, therefore, presents the question whether a fictitious domicil will protect the goods of a party from attachment. It appears to us that the cases of *Judson* v. *Lathrop*, 1 An. 78, and *Lacock* v. *Davidson*, 9 An. 162, are decisive of the question, and that courts of justice must look to the real facts of the case, and that where it appears that the declarations of a party are made with a reference to making testimony in his favor, they must be rejected.

The testimony in this case differs from the other cases against this defendant lately before us.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, and that said attachment be maintained, and this cause be re-instated and remanded for further proceeding; the defendant paying the costs of the appeal.

SPOFFORD, J., took no part in this case.