## Case No. 4,053.

### DOYLE v. CLARK.

[1 Flip. 536;[1] 8 Reporter, 163; 9 Cent. Law J. 5.]

Circuit Court, E. D. Michigan. March Term, 1876.

DOMICIL—INTENTION AND FACT—EVIDENCE.

1. Declarations, which are part of the res gestae, are admissible in evidence to show intention as a general rule, but admissions of declarations either written or verbal in connection with acts done, and giving character to such acts, depend much on circumstances and upon the nearness or distance of time to the declarations made and the acts done.

2. Instances are numerous where the declarations of a person made at the time of changing a residence have been received as evidence of an intention to make the change permanent, and to rebut the presumption that it was for temporary purposes only.

[Cited in U. S. v. Chong Sam, 47 Fed. 886.]

3. At the same time, the admissibility of such declarations is somewhat in the discretion of the court, and subject to another general rule, viz.: that a person will not be allowed by his declarations to make out a case for himself.

On motion to remand.

Plaintiff, a citizen of Illinois, began suit against the defendant in the superior court of Detroit. This was removed to this court and tried on the 24th day of June. On the trial plaintiff submitted to a nonsuit, and two days thereafter began this suit for the same cause of action in the superior court of Detroit, which was also removed upon the petition of the defendant setting forth that plaintiff was a citizen of Illinois. Motion was made to remand on the ground that at the time the suit was commenced plaintiff was a citizen of this state, and this court had no jurisdiction.

Mr. Atkinson, for plaintiff.

Mr. Wisner, for defendant.

BROWN, District Judge. If plaintiff be a citizen of the United States, and in absence of proof to the contrary I must presume such to be the fact, her citizenship of

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

any particular state depends solely upon her residence within such state. The constitution, investing jurisdiction in the federal courts over controversies between citizens of different states, is to be interpreted as if the word "resident" were used instead of "citizen," though when used in contradistinction to the word "alien," it signifies that class of persons who by nativity or naturalization have obtained the right to the protection of the general government and to the prerogatives and immunities attached thereto. Cooper v. Galbraith [Case No. 3,193]; Read v. Bertrand [Id. 11,601]; Butler v. Farnsworth [Id. 2,240]; Gardner v. Sharp [Id. 5,236].

Two things must concur to effectuate a change of domicil: 1st—An actual change or removal of residence. 2d—An intention to make such change or removal permanent. If both of these requisites concur in point of time, the place to which removal is made becomes instantly the place of domicil. notwithstanding the party may entertain a floating intention to return at some future period. Story. Confl. of Laws, § 46. This is illustrated in the ordinary case of an emigrant who transports his family and household effects to a new state, and settles upon a farm A change of domicil takes place instantly upon his arrival. On the other hand, a person may transport his family and household effects in like manner to another state for a temporary purpose, as for instance the settlement of some particular business, or for a change of climate in summer, without thereby disturbing his former residence. The leading English case on this question is that of Somerville v. Somerville, 5 Ves. 750, and the principles there laid down have been since so often reaffirmed as to have become the unquestioned law of both countries. From a very large number of American cases I cite the following as the best illustrations of the general doctrine: State v. Hallet, 8 Ala. 159; Ringgold v. Barley, 5 Md. 186; Smith v. Croom, 7 Fla. 81; McKowen v. McGuire. 15 La. Ann. 637; Leach v. Pillsbury. 15 N. H. 137; Johnson v. Twenty-One Bales [Case No. 7,417]; Jennison v. Hapgood. 10 Pick. 98; Williams v. Whiting, 11 Mass. 423.

While, as before observed, the general rule applicable to a change of domicil is unquestioned, much difficulty is experienced in applying it to a given state of facts. In the case under consideration, it appears with sufficient certainty that plaintiff, prior to her coming here to attend the trial of her cause, was a citizen of Illinois, and that she is now a citizen of Michigan, and the only point to be determined is, when this change of citizenship took place. Her deposition is loose and contradictory, and there is an evident desire on her part to make it appear that she was a resident of this state at the time this second suit was commenced. She states in substance "that she has resided in Michigan since her trial here, June 24; that this has been her permanent residence since then; that Michigan has been her home off and on these last two years; that she had no home, and lived in Chicago up to July last; last July her house was sold." That she was here on the day of the trial of her case, and told Mr. Atkinson that she would become a citizen. She also told him three months before; and asked him whether there was any oath necessary or anything else required; that she asked him that in this court room, and told him it was her intention to become a citizen; that immediately after that she resided at St. Mary's Hospital for three days, and then, in response to a telegram from her brother, returned to Chicago to nurse him, came back after three weeks, stopped at the Biddle House a week, and then at the Alexander House, at Grosse Isle, three or four weeks, and then at a farmer's; thence she went to St. Mary's Hospital, and has since remained there, though it appears she went to Mt. Clemens and remained some time, taking care of her brother. She concludes her direct examination by saying that from the date of the trial she became a citizen of this state. It appears that she came to this city two weeks before the trial, because, as she said, she had no home anywhere else, and the climate agreed with her better than Chicago.

Her counsel testifies in an affidavit that she has continuously claimed Detroit as her home, since this suit was commenced, and removed here on purpose to prevent the removal of this case to this court, where it was once tried, and a non-suit suffered. I have no doubt the truth is substantially this, that plaintiff came here with no intention of changing her residence, but to attend the trial of the case, that disappointed at the result of her trial, and desiring to commence a new suit in the superior court, she announced her intention of becoming a resident of this state, and did finally remove here. Disembarrassed of her declaration to her counsel, made at the time of the non-suit in this court room, that she intended to become a citizen of this state, the question would present no difficulty. It is the ordinary case of a person coming from abroad to attend the trial of a suit in which she is interested, and subsequently made this state her residence. Did then her declaration to her counsel, that she intended to change her residence, and become a citizen of this state, operate to effectuate such change? The general rule is well understood, that declarations which are a part of the res gestae are admissible in evidence to show intention, and the instances are numerous where the declarations of a person made in changing a residence have been received as evidence of an intention to make the change permanent, and to rebut any presumption that it was made for temporary purposes. At the same time, the ad-

missibility of such declarations is somewhat in the discretion of the court and is subject to another general rule, that a person will not be allowed by his declarations to make a case for himself. In matters of general and public interest, in which evidence of reputation or common fame is admitted, the declarations of persons supposed to be dead are held admissible only if made before any controversy arose touching the matter to which they relate, or as it is usually expressed ante litem motam. 1 Greenl. Ev. §§ 130, 131.

Declarations which are claimed to be part of the res gestae are apparently subject to a similar qualification. The principle is illustrated in the case of Thorndike v. City of Boston, 1 Metc. [Mass.] 247, where the question arose upon the admission of letters, offered on the ground that they were declarations of the plaintiff accompanied with his acts of removal from Boston to Edinburgh, addressed to his agent in the ordinary course of business, and were, therefore, as res gestae, good evidence of his intention connected with those acts. The case turned upon the question whether the plaintiff was liable to taxation as an inhabitant of Boston in 1837, and the court held that letters written before the plaintiff knew the tax had been assessed upon him were admissible, but it was strongly inclined to the opinion that letters written after the suit was brought were not so. The court observe: "The admission of declarations either written or verbal in connection with acts done, and giving character to such acts, depends much on circumstances and upon the nearness or distance of time to the declarations made and the acts done."

In the case of Watson v. Simpson, 13 La. Ann. 337, conversations with a party, where he had an opportunity to manufacture evidence for the purpose of establishing a fictitious domicil, were held not to affect the real facts of the case. So, also, in Tobin v. Walkinshaw [Case No. 14,070], a distinction is taken between declarations as to residence made before and after a controversy arose on the question as to residence became material.

Now, in the case under consideration, the declarations in question not only did not accompany the act of removal, being made some two weeks after she arrived here, but were evidently made with the design thereby of establishing a new domicil, or, in other words, of making a case for herself. There had been no change of residence. She retained her house in Chicago, and there is nothing tending to show that she came here with anything more than her ordinary clothing. It is true that she is poor, and there is nothing to show that she has now brought her furniture with her; but it does not appear that in July she sold and abandoned her house in Chicago, and that since that time she has remained in this state. There had been, it is true, a change of presence, but nothing to indicate a change of residence.

This case bears some resemblance to that of Williams v. Whiting, 11 Mass. 423, where the question arose as to the residence of an elector, on the 2d of November, 1812. It appeared that on the 28th of October he resided in Roxbury, being a householder and having a family there. Previous to this time he had been appointed and qualified as clerk of the court in the county of Norfolk, and, on the 28th of October, came to Dedham for the purpose of performing the duties of his office, took possession of the apartments in the court house, but his family and household establishment remained in Roxbury until the 12th of November, when he removed them to Dedham. From the 28th of October until the 12th of November he boarded at a public house in Dedham. On the 29th of October he contracted for a house in Dedham, which he was to rent and occupy from the 12th of November. On November 1st, he returned to his family in Roxbury at night [where he continued until the 4th, when he contracted for a horse and chaise to go to Dedham daily and return to Roxbury at night].[2] The court were of opinion, under the circumstances, he remained an inhabitant of Roxbury until the day of his removal with his family. A still stronger case is that of State v. Hallet, 8 Ala. 159. In this case a resident of Georgia came to Alabama for the purpose of settling, leased land and purchased materials for the erection of a foundry, and returned to Georgia for his family, and, after some detention, returned with his family and took up his residence in Alabama. The court held that he did not lose his domicil in Georgia, or acquire one in Alabama until his actual removal with the intention of remaining. The court remark that his acts in coming to Alabama with the design of settling and manifesting his intention of making that state his permanent residence by leasing a piece of land, procuring materials for the erection of a foundry, mark unequivocally his intention of changing his residence, but were not sufficient to cause a loss of the domicil he previously had. If, say the court, on his return to Georgia he had, before being able to carry his purpose into effect died, it can admit of no doubt the courts of Georgia and not of this state would have been entitled to distribute his estate. The same rule must have prevailed if he had died upon the journey here, for until he had actually reached here there would have been no change in the fact of the domicil. See, also, McIntyre v. Chappell, 4 Tex. 187; 4 Cow. 516.

Putting the illustration used in the Alabama case, it seems to me there can be no doubt that if the plaintiff had died after she had returned to Chicago, the day following the commencement of this suit, her estate would have been administered there and not

---

[2] [From 9 Cent. Law J. 7.]

here. I am satisfied she was not a citizen of this state at the time this suit was commenced, and the motion to remand must be denied.