## Ex parte LONG LOCK.

(District Court, N. D. New York. October 14, 1909.)

1. ALIENS (§ 32*)—CHINESE PERSON—DEPORTATION PROCEEDINGS—BURDEN OF PROOF.

Where, in deportation proceedings against a Chinese person, he presented a commissioner's judgment dismissing former similar proceedings on the ground that the person described therein was a citizen of the United States, claiming that such determination was res judicata, the burden was on him to establish that he was the identical person named and described in such judgment.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

2. ALIENS (§ 32*)—CHINESE PERSON—DEPORTATION PROCEEDINGS—REVIEW—HABEAS CORPUS.

The decision of a commissioner of immigration in Chinese deportation proceedings, affirmed by the Department of Commerce and Labor, is only reviewable by the courts on habeas corpus in case it is alleged that the petitioner has not been given a full and fair hearing and opportunity to prove his right to remain in the United States, or in the event of arbitrary or illegal action or abuse of discretion; the credibility of the witnesses and the question of identification being questions of fact for the administrative officers, whose decision, after full and fair hearing, is conclusive on the courts.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 95; Dec. Dig. § 32.*]

3. ALIENS (§ 32*)—CHINESE PERSONS—EXCLUSION—HEARING.

The determination of a commissioner, affirmed after retrial on additional testimony by the Department of Commerce and Labor, that accused, a Chinese person, had not established to their satisfaction that he was the identical person who in a former proceeding had been held entitled to remain in the United States as a citizen, *held* neither arbitrary, nor an abuse of discretion, but justified by the facts.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

Application by Long Lock, a Chinese person, for a writ of habeas corpus to obtain his release from imprisonment under a deportation warrant. Writ dismissed, and petitioner remanded.

George J. Moore, for petitioner.
H. E. Owen, Asst. U. S. Atty.

RAY, District Judge. The petitioner applied for admission into the United States at Malone, N. Y., July 10, 1909, and his case was in-

quired into by E. G. Sperry, immigration officer in charge of said port of entry, touching his right to enter, viz.: Was Long Lock born in the United States? Said immigration officer, after a full hearing, decided and adjudged that the petitioner was an alien Chinese person, not entitled to enter the United States and that he had not established such right, and admission was refused. An appeal was taken to the Department of Commerce and Labor, and after full consideration and further inquiry the appeal was dismissed on the merits. The record shows that a full and fair investigation and inquiry was had and made, and additional evidence taken and considered, and decision made on a question of fact.

The petitioner contends that he has established as matter of law his right to enter the United States as a citizen thereof, and that he was born in the United States. In substance, his contention is that he was arbitrarily denied admission. He contends that the question of his right to be and remain in the United States, on the ground he was born here, has been tried and adjudicated in his favor before one of the United States commissioners in the district of Vermont, and that such adjudication is final, res adjudicata, not having been appealed from, set aside, or reversed. There is no proof, outside the mere uncorroborated statement of the petitioner, that he was born in the United States, unless the adjudication referred to is to be deemed conclusive proof of that fact. The government does not contend that the judgment of the commissioner is not conclusive, if Long Lock, the petitioner here, is the identical person who was tried in deportation proceedings before such commissioner. The government does contend that the burden was on Long Lock to establish to the satisfaction of the immigration officer (1) that such trial and adjudication was had and made; and (2) that Long Lock, the person now applying for admission, the petitioner here, is the same person whose right to enter and be in the United States was so favorably adjudicated.

The record shows as follows: (1) That October 16, 1897, a Chinese person bearing the name Long Lock was before United States Commissioner George E. Johnson, at Burlington, Vt., in deportation proceedings on the charge he was an alien Chinese person and not within the exempt class or classes; (2) that after the hearing of evidence on the question whether or not said person, going by the name of Long Lock, was born in the United States, the commissioner decided that he was there born, and thereupon discharged him; (3) an order or judgment to that effect was entered by the commissioner. Thereupon said commissioner delivered to the person so tried and discharged a certificate reading as follows:

"United States of America, District of Vermont.

"I, George E. Johnson, United States commissioner, within and for the district of Vermont, hereby certify that a complaint was exhibited before me by John H. Senter, United States attorney within and for said district, on the 16th day of October, A. D. 1897, charging, in substance, that on or about the 14th day of October, A. D. 1897, at Richford, in said district, one Long Lock, a person of Chinese descent, did unlawfully come into and was within the United States, in violation of section —— of the Revised Statutes of the United States; and on the 16th day of October, A. D. 1897, the defendant was brought before me at my office in the city of Burlington, in said district, and

after a full hearing on said charge, the said United States attorney being present, it was adjudged by me that said Long Lock had the lawful right to be and remain in the United States, having found that he is an American citizen by reason of having been born in the United States, and he was thereupon discharged from custody.

"Given under my hand and official seal at the city of Burlington, in the district of Vermont, this 16th day of October, A. D. 1897.

"[Seal.]                                        Geo. E. Johnson,
                    "United States Commissioner, District of Vermont."

No photograph of said Chinese person was attached thereto, and, so far as appears, he had no distinguishing marks. There is no evidence or proof that the petitioner here, Long Lock, is the same person, the same Long Lock, who was tried before said commissioner and discharged, and to whom the certificate was delivered, except that this petitioner swears he is that person, and evidence was given tending to show that in 1905 he exhibited same to Inspector Wylie at New York, and that in September, 1907, ten years after its date, this petitioner, Long Lock, produced such certificate to one James V. Storey, a notary public of the borough of Manhattan, N. Y., with a certified copy of the record of proceedings before said Johnson, and made oath as follows:

"State of New York, County of New York, Borough of Manhattan—ss.:

"Long Lock, being duly sworn, deposes and testifies as follows, viz.: My name is Long Lock. My address is No. 216 Richmond Terrace, West Brighton, Staten Island, New York. I do further swear that I am a citizen of the United States by reason of having been born therein, at San Francisco, California; that I am the holder of an original certificate of discharge issued to me by United States Commissioner Geo. E. Johnson at Burlington, Vermont, on the 16th .day of October, 1897, and which certificate recited the fact that I was born in the United States and in consequence a citizen thereof. A copy of a certified copy of the transcript of record is attached hereto, the original of which is in my possession, together with the original certificate of discharge.
"[Signed]                                        Long Lock.
"Sworn to before me this 11th day of September, 1907.
                    "James V. Storey, Notary Public. [Seal.]"

To this affidavit his photograph was attached. At that time one Lue Chung also made an affidavit before said Storey as follows:

"State of New York, County of New York, Borough of Manhattan—ss.:

"The undersigned, being duly sworn, deposes and testifies as follows: That I have read the affidavit of Long Lock annexed hereto, and have seen the photograph attached to said affidavit, and recognize the same to be the photograph of Long Lock, with whom I am personally acquainted, and whom I know to be the lawful possessor of an original certificate of discharge issued by United States Commissioner Geo. E. Johnson at Burlington, Vermont, on the 16th day of October, 1897.
"[Signed]                                        Lue Chung,
                    "216 Richmond Terrace, W. B., N. Y.
"Sworn to before me this 11th day of September, 1907.
                    "James V. Storey, Notary Public. [Seal.]'

This petitioner, Long Lock, seems then to have been in the United States. I find no evidence given by Storey. In October, 1907, the petitioner says he went to China on a visit, and a paper was produced, stamped "Departed from Malone, N. Y., Oct. 23, 1907." This fact does not seem to be questioned. The petitioner says he had been em-

ployed as laundryman at 16 Richmond street, Richmond Terrace, S. I. This is not disproved. The only knowledge Lue Chung, or Jow, had that Long Lock was tried at Burlington, was what Long Lock told him. Lue Chung, sworn in this matter at New York before Inspector Wylie, said that he knew petitioner 10 or 11 years ago at 10 Pell street, New York; that the petitioner then told him he was born at San Francisco, and showed him a paper; but he does not appear to recognize or identify it as the one the petitioner had in 1897. He did not read it, and gave no evidence tending to so identify it. Lee Yen, or Lee Len Men, when shown the photograph of petitioner, said he recognized it.

"Q. As whom? A. I forget; Leong. He has two names, you know. Q. Give me the name you knew him under. A. Shue Hen."

He says the petitioner had a laundry at Staten Island, bought stuff of him, and that before he went to China in 1907 he showed him (witness) a paper which had a piece torn off, and that he took petitioner to Storey to have some papers drawn up.

The petitioner, on being sworn, told of being taken to China when 5 years of age, but, of course, had no memory of the transaction; of living in China until 18 years of age, when he came to the United States, and, as he says, was arrested and tried in the deportation proceedings at Burlington, Vt. He gives a short description of his journey from Montreal to Burlington; but, as the inspector says, there is nothing in his story that could not be learned in a few minutes. He states that he is 30 years of age; was born in February or March, 1880; that his mother's name was Wong She, and that she died 5 years ago; that his father's name is Long Hing Yen, now living in China, to which place he returned from the United States in September or October, 1904; that he is an only child, was born at 712 Dupont street, San Francisco, Cal., as he was informed by his parents; that he went to China when 5 years of age, and returned in September or October, 1897; that he was married in China early part of twenty-third year of K. S., and left for the United States the eighth month of same year; that he had a son born on the 11th day of the tenth month of the twenty-fourth year of K. S., and that his eldest son was born on the 6th day of the seventh month of the twenty-third year of K. S., or August 3, 1897; that his older son was born 7 months after his marriage, and that he made a mistake in first stating dates of birth; that his older son was born the 6th day of the seventh month of the twenty-third year of K. S., and his youngest son on the 3d day of the third month of the twenty-fourth year of K. S., and that his second son was born eight months after the birth of the first one; that his father lived in San Francisco 15 years, and was a laboring man. He says Lee Len Men, now in China, knows of his birth and lived in San Francisco at the time. He says he made a mistake when he first gave the dates of his marriage and the birth of his children. When asked why he hesitated so long in answering, when he was shown it was impossible for his sons to have been born as at first stated by him, he answered:

"I realized I made a mistake, and my heart failed me."

Inspector H. R. Sisson, of New York, in his letter of July 17, 1909, to the inspector at Malone, N. Y., says:

"The census records of this office show that this applicant, Long Lock, was residing at 216 Richmond Terrace, West Brighton, Staten Island, on June 1, 1905, and presented the discharge certificate which forms a part of this record; the initials of Inspector Wylie appearing upon the reverse side thereof in the upper left-hand corner."

It is conceded, therefore, that in June, 1905, the petitioner had possession of such certificate, and the evidence tends to show he had it in September, 1907. He had it on his return from China. His residence of some nine or ten years in the United States, in New York and vicinity, was unmolested by the United States, if he was not born in the United States, he had no right to be and remain here during that time. He went away, leaving a record of his departure, in 1907, and in 1905 he had shown the certificate of Commissioner Johnson, referred to, to Inspector Wylie. He has been denied admission on the ground he has not identified himself as the Long Lock tried and discharged by Commissioner Johnson in 1897. It was conceded on the hearing before me that Johnson is dead, and that the evidence of John H. Senter, then United States attorney having charge of that proceeding, cannot be had by reason of his death or some other cause. The father of the petitioner is in China. It was, therefore, impossible to produce any one who was present at such hearing and identify the petitioner as the Long Lock tried and discharged by Johnson.

It is possible, of course, that this petitioner is not the Long Lock then arrested, tried, and discharged. It is possible that this petitioner obtained, prior to 1905, this certificate from the Long Lock who was so tried and discharged; that there was another person bearing that name. It appears that this petitioner, at Staten Island, went by another name, Shue Hen, which was not his married name, as that is Long Wah. Certain presumptions arise from the possession of certain documents; but they are rebuttable. In this case I find no explanation of the fact that this petitioner bore two names in New York and Staten Island prior to his going to China. If he was "Long Lock" when tried at Burlington, Vt., why was he "Shue Hen" when living at New York and Staten Island in the succeeding years? Why was he passing under that name? It does not appear that any investigation was made as to the identity of the person presenting the certificate with the one named therein when it was marked by Inspector Wylie in 1905 in connection with the census records.

It seems to me that the question presented is narrowed to this: Was the burden on the petitioner to establish to the satisfaction of Inspector Sperry in the first instance, and to the satisfaction of the Department of Commerce and Labor on appeal, that he was the same person tried and discharged by Commissioner Johnson in 1897? and was the possession of the certificate in 1905, and 1907, and on his return from China, with his statement under oath that he was such person, conclusive of the fact, in view of all the evidence and circumstances? If, under the evidence and circumstances of the case, a fair question of fact as to identity was presented for the determination of

the inspector and department, and he and it have decided that question on evidence from which two different conclusions may be arrived at, the courts should not assume to disturb the finding and arrogate to itself the powers confided by the Congress of the United States to that executive officer and that executive department. The court has no right to compel the admission of a Chinese person applying therefor on the ground it would have arrived at a different conclusion on the evidence from that arrived at by the inspector in charge and affirmed by the department, when a fair question of fact is presented for decision; there being no abuse of discretion. United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040. This was the case of a person of Chinese descent seeking admission into the United States.

In United States v. Sing Tuck and 31 Others, 194 U. S. 161, 166, 24 Sup. Ct. 621, 48 L. Ed. 917, the Supreme Court decided that Congress has the power, and has exercised it, to confer upon executive officers and an executive department of the government the determinations of questions of fact as to the right of a person of Chinese descent to enter the United States, including the question of fact whether or not he was born in the United States. In that case the court held that in case of adverse decision the applicant for admission must pursue his remedy by appeal to the Department of Commerce and Labor before he could avail himself of the remedy of writ of habeas corpus. It did not decide whether or not a further trial of the question could be had on writ of habeas corpus or other proceedings after adverse decision by the department.

In United States v. Ju Toy, supra, the question was squarely up and before the court, and it decided:

"Even though the fifth amendment does apply to one seeking entrance to this country, and to deny him admission may deprive him of liberty, due process of law does not necessarily require a judicial trial, and Congress may intrust the decision of his right to enter to an executive officer. Under the Chinese exclusion and the immigration laws, where a person of Chinese descent asks admission to the United States, claiming that he is a native-born citizen thereof, and the lawfully designated officers find that he is not, and upon appeal that finding is approved by the Secretary of Commerce and Labor, and it does not appear that there was any abuse of discretion, such finding and action of the executive officers should be treated by the courts as having been made by a competent tribunal, with due process of law, and as final and conclusive; and in habeas corpus proceedings, commenced thereafter, and based solely on the ground of the applicant's alleged citizenship, the court should dismiss the writ, and not direct new and further evidence as to the question of citizenship. A person whose right to enter the United States is questioned under the immigration laws is to be regarded as if he had stopped at the limit of its jurisdiction, although physically he may be within its boundaries."

This in effect was a holding that the decision of the Commissioner of Immigration, affirmed by the Department of Commerce and Labor, is final, if the applicant was given a full and fair hearing and opportunity to prove his citizenship, and there was no arbitrary or illegal action or abuse of discretion.

In Chin Yow v. United States, 208 U. S. 8, 11, 28 Sup. Ct. 201, 52 L. Ed. 369, the question was again up. In that case the court below dismissed the writ for want of jurisdiction; the Commissioner of Im-

migration having denied admission, and such action having been affirmed by the Department of Commerce and Labor. This action was clearly a misapprehension of the decision of the Supreme Court in United States v. Ju Toy, supra. The petitioner alleged arbitrary action and deprivation of the right to procure and present evidence of his birth in the United States, and that he could have done so, had he been given the opportunity. On appeal Mr. Justice Holmes gave the opinion of the court, and after reciting the above facts said:

"The question is whether he is entitled to a writ of habeas corpus in such a case as that? Of course, if the writ is granted, the first issue to be tried is the truth of the allegations last mentioned (those of arbitrary action and the denial of an opportunity to present his evidence of citizenship). If the petitioner was not denied a fair opportunity to produce the evidence that he desired, or a fair, though summary, hearing, the case can proceed no farther. Those facts are the foundation of the jurisdiction of the district court, if it has any jurisdiction at all. It must not be supposed that the mere allegation of the facts opens the merits of the case, whether those facts are proved or not. And, by way of caution, we may add that jurisdiction (to grant the writ) would not be established simply by proving that the Commissioner and the Department of Commerce and Labor did not accept certain sworn statements as true, even though no contrary or impeaching testimony was adduced. But, supposing that it could be shown to the satisfaction of the District Judge that the petitioner had been allowed nothing but the semblance of a hearing, as we assume to be alleged, the question is, we repeat, whether habeas corpus may not be used to give the petitioner the hearing that he has been denied. The statutes purport to exclude aliens only. They create or recognize—for present purposes it does not matter which—the right of citizens outside the jurisdiction to return to the United States. If one alleging himself to be a citizen is not allowed a chance to establish his right in the mode provided by those statutes, although that mode is intended to be exclusive, the statutes cannot be taken to require him to be turned back without more. The decision of the department is final; but that is on the presupposition that the decision was after a hearing in good faith, however summary in form. As between the substantive right of citizens to enter, and of persons alleging themselves to be citizens to have a chance to prove their allegation on the one side and the conclusiveness of the Commissioner's fiat on the other, when one or the other must give way, the latter must yield. In such a case something must be done, and it naturally falls to be done by the courts. In order to decide what we must analyze a little. * * * But, unless and until it is proved to the satisfaction of the judge that a hearing properly so called was denied, the merits of the case are not open, and, we may add, the denial of a hearing cannot be established by proving that the decision was wrong."

The Supreme Court here plainly holds, as it has repeatedly held, that the truthfulness of Chinese witnesses, of the applicant for admission, and the question of identification, are questions of fact for the Commissioner of Immigration and Department of Commerce and Labor, and that their decision on these questions, where a full and fair hearing has been had, is final and binding on the courts. See Fong Yue Ting v. United States, 149 U. S. 698, 713, 729, 13 Sup. Ct. 1016, 37 L. Ed. 905; Nishimura Ekiu's Case, 142 U. S. 660, 12 Sup. Ct. 336, 35 L. Ed. 1146; Ah How v. United States, 193 U. S. 65, 76, 78, 24 Sup. Ct. 357, 48 L. Ed. 619; Chin Yow v. United States, 208 U. S. 8, 11, 28 Sup. Ct. 201, 52 L. Ed. 369.

In Ah How v. United States, supra, Mr. Justice Holmes said:

"Of course, if the burden of proof was on the appellants, the commissioner and judge might not be satisfied by the affirmative evidence produced."

The learned justice cited Fong Yue Ting v. United States, supra, to show the decision of the lower courts could not be reviewed on the question of fact. At page 78 of 193 U. S., page 359 of 24 Sup. Ct. (48 L. Ed. 619), on the question of establishing identity, the same justice said:

"Apart from the possibility that the Commissioner in the present hearing was not satisfied of the identity of the party," etc.

In Chin Yow v. United States, supra, as already quoted, the court held that a writ of habeas corpus cannot be granted on the ground that the inspector and department has refused to accept certain sworn statements as true, even though no contrary or impeaching testimony was introduced. Inspector Sperry expressly states here that he did not think the identity of this petitioner with the Long Lock of the certificate had been established. The Department of Commerce and Labor was not satisfied, and this court is far from satisfied, that this petitioner is the Long Lock apprehended and tried before and discharged by Commissioner Johnson in 1897. Where and when he obtained the certificate issued by Johnson is not shown, except by the bare testimony of the petitioner himself, who bore and was known by a different name in 1905 and 1907, and whose credibility was shaken on his examination before Inspector Sperry. It is not shown that from 1897 to 1905 the petitioner bore the name Long Lock.

This petitioner was before Inspector Sperry, who saw him and observed his manner of giving testimony. The inspector was far better able to judge of his candor and truthfulness than any court or judge can be, and, under the decisions of the Supreme Court, in my judgment, it would be an unwarranted assumption of power to override the prior determinations of the executive officers and department to whom Congress has lawfully and constitutionally confided the decision of the question of fact. No bias is shown; no violation of law; no denial of a full and fair hearing; no arbitrary or illegal action; no abuse of discretion. In fact, a full and broad opportunity was given for the introduction of all evidence bearing on the case. As decided in Chin Yow v. United States, 208 U. S. 8, 11, 28 Sup. Ct. 201, 52 L. Ed. 369, this court can only examine the evidence to see (1) was a full and fair and unbiased hearing had? and (2) was the decision based on such a state of facts that a question of fact was presented for the decision of the inspector? or (3) was the evidence conclusive, as matter of law, so that the decision, affirmed by the Department of Commerce and Labor, was arbitrary and unwarranted? I think the decision and order was fully warranted.

The writ is dismissed, and the person, Long Lock, remanded, to be dealt with according to law.