IN THE MATTER OF THE APPLICATION OF
RYUZO HIGA FOR A WRIT OF HABEAS
CORPUS.

## April 12, 1913.

1. *Domicil of alien—Presumption of law:* An alien coming to Hawaii as a farm laborer continued that occupation for four years and then returned to his own country and, after a visit of eight months, returned to Hawaii, bringing his wife with him for the purpose of resuming his former occupation in the same locality as before. *Held,* that the facts relating to his first coming created a presumption that he thereby acquired a domicil in Hawaii, and that presumption is fortified by his temporary trip to Japan and return with his wife to resume his occupation and residence in Hawaii.

2. *Same—Change of domicil—Presumption of law:* Any expectation by him to return to Japan after a further stay in Hawaii of about ten years, standing alone, would not affect such domicil, which once established is presumed to continue until actually changed.

3. *Domiciled alien—Alien immigrant—Immigration Act—Jurisdiction of board of special inquiry:* The facts showed the petitioner to be a resident alien, and as the statute of 1907, 34 Stat. 898, under which the proceedings occurred, provides only for the deportation of alien immigrants, the board of special inquiry was without jurisdiction to deport him.

4. *Habeas corpus—Jurisdiction of court:* Relief by habeas corpus may be granted when the evidence is uncontradicted and shows without doubt that the case is beyond the statutes and not covered by them.

*Habeas Corpus:*   Petition for writ.

*G. S. Curry* and *G. A. Davis* for petitioner.
*C. C. Bitting,* Assistant U. S. Attorney, for respondent.

DOLE, J.   This is an application for a writ of habeas corpus. The applicant, Ryuzo Higa, arrived at the port of Honolulu in the Territory of Hawaii, January 28, 1913, with his wife, and was refused a landing by the board of special inquiry on the ground of his having a dangerous contagious disease, to-wit, unciniarisis, and ordered to be de-

ported. It also appears incidentally that another ground of the decision of deportation was the finding of the board that he was not a resident of the Territory,—supposedly meaning that he had no domicil there. He appealed to the Secretary of the Department of Commerce and Labor, who sustained the findings of the board of special inquiry.

The writ was granted and the applicant produced in court.

It is not denied that the applicant formerly came to the Territory of Hawaii in May 1908, and remained here until May 1912, when he left for Japan, returning as stated above. The petition alleges that upon his first arrival here he had his domicil on the island of Hawaii, where he worked as a farm laborer, and that his departure for Japan in 1912 was for a temporary visit with the intention of returning and continuing to reside on said island of Hawaii, and he claims the right to land on that ground,—i. e., that he is a resident alien and not an immigrant alien. The report of further testimony taken at the hearing before the board of special inquiry, which is made a part of the return, bearing directly on the question of domicil is as follows:—

"Q. Where did you live when you first came to Hawaii? A. Wainaku, Hawaii. Q. How long did you live there? A. Four years. Q. Then where did you go? A. Waiakea, Hawaii. Q. How long did you live there? A. When I came to Hawaii the first I went to Waiakea and lived six months and then I went to Wainaku. Q. What did you do in Hawaii? A. Farm laborer. Q. What is your object in coming to Hawaii now? A. Farm laborer. Q. How long do you expect to live in Hawaii? A. About ten years. Q. Then where do you expect to go? A. Then I will go back to Japan. Q. Where do you consider you have a residence? A. Wainaku, Hawaii. Q. How do you make that out? A. Because my brother lives there. Q. Your parents, together with two of your brothers and two of your sisters, live in Japan, do they not? A. Yes. Q. Who told

you to testify that you have a residence in Hawaii? A. No one. Q. Was it your intention when you left here in May of last year to return? A. Yes. Q. If you are landed, where do you expect to go? A. Wainaku. Q. Why did you bring your wife to Hawaii this time? A. To work with me on the plantation. Q. What is your intention in coming to Hawaii now, to live here and make a home here, or is it your intention to work here, you and your wife, and save money and then return to Japan? A. I want to go back to Japan. Q. Do I understand you correctly that you brought your wife here to work on the plantation with you so that you could make and save more money? A. Yes. Q. Have you anything further to say? A. No."

The investigation shows no effort to draw out information as to the status of the applicant after his first arrival. Beyond ascertaining where he had resided and that he was a farm laborer and that he had no property here and no money invested here, there were no further questions pertinent to his then status or his intentions in regard to his stay in Hawaii, but the examination was diverted, as appears above, to ascertaining his present intention as to his future stay here and as to returning to Japan.

The real question at issue was, not what were his present intentions as to his movements ten years hence, but what was his status previous to his visit to Japan, as might be gathered from his acts and his plans during such stay here.

"The place where a person lives is taken to be his domicil until facts adduced establish the contrary, and a domicil when acquired is presumed to continue until it is shown to have been changed." *Anderson v. Watt*, 138 U. S. 694, 706; *Mitchell v. United States*, 88 U. S. 350, 352; *Desmare v. United States*, 93 U. S. 605, 609.

[2] So far as can be learned from the somewhat scanty record of the return, and the special attention given to the present plans of the petitioner, the board reached the conclusion that the residence in Hawaii acquired previously by

him had been lost by his present intention to return to Japan after about a ten years' further stay in Hawaii. If I am right in this, the board has mistaken the law of domicil, inasmuch as when a domicil is acquired it is presumed to continue until it is shown to have been changed. *Anderson v. Watt,* supra.

"Two things must concur to effectuate a change of domicil: (1) An actual change or removal of residence. (2) An intention to make such change or removal permanent." *Doyle v. Clark,* 7 Fed. Cas. 1029, No. 4053; Story, Conflict of Laws, sec. 46; *Marks v. Marks,* 75 Fed. 321, 328.

These two things do not concur here.

[1] There is no dispute about the facts that petitioner arrived in Hawaii in May 1908, and after a stay of six months in Waiakea, settled in Wainaku and lived there as a farm laborer until May 1912, when he went to Japan with the intention of returning and did return in January 1913, bringing his wife with him, with the intention of resuming his former occupation of farm laborer, and with the expectation of returning to Japan in about ten years. The above dates are exactly admitted in the return. The presumption that he acquired a domicil in Hawaii is supported by his visit to Japan and return with his wife to resume his former occupation in his former place of residence, Wainaku. Upon these facts the conclusion of law must be that the petitioner acquired a domicil in his first residence in Hawaii, and that nothing has occurred or has been done by him since, to change it.

While the case of *Ex parte Petterson,* 166 Fed. 536, 540-541, rules that the cases decided under the provisions of the immigration act of March 3, 1891, 26 Stat. 1084, should be given little weight in considering cases brought under the immigration act of March 3, 1903, 32 Stat. 1213, because in the latter act the word "immigrant," which was contained in the former act as qualifying the word "alien," was omitted. Such conclusion, even if correct (*Rodgers v. United*

*States, ex rel Buchsbaum,* 152 Fed. 346, 351), apply-
ing to the immigration act of 1903, does not appear to apply
to the immigration act of February 20; 1907, 34 Stat. 898,
under which law this case is brought, inasmuch as the stat-
ute, besides its title which is in words "An act to regulate
the immigration of aliens into the United States," contains
repeated expressions which could hardly have been used
unless Congress had intended to limit the scope of the
statute to "alien immigrants." For instance the words
"immigrant fund" are used in sections 1, 19, 20, 24 and 39;
section 7 forbids transportation companies from soliciting
or encouraging the "immigration of any aliens;" sections
12, 14, 15, 16, 17, 18, 22, 24 and 25 refer to "immigration
officers;" sections 12, 14, 19, 22, 24, 25, 32, 36 and 40 refer
to the "Commissioner General of Immigration" who, by
virtue of section 22, has charge of all laws relating to the
"immigration of aliens;" section 25 provides for boards of
special inquiry "for the prompt determination of all cases
of immigrants detained  .  .  .  under the provision of
law;" sections 30, 31 and 40 refer to "immigrant stations,"
and authorize the President to negotiate treaties for regu-
lating the "immigration of aliens to the United States;"
section 40 provides for a "division of information in the
Bureau of Immigration and Naturalization.  .  .  .  to
promote beneficial distribution of aliens admitted into the
United States among the several States and Territories de-
siring immigration;" section 42 treats of the accommodation
to be given "immigrant passengers" on vessels bringing
them to the United States. Only once is the phrase "alien
immigrant" used in the act of 1891, and not at all in the
act of 1903.

[3] It would appear from these references that the act of
1907 does not apply to resident aliens, and that the board
of special inquiry was without jurisdiction to order the
deportation of the petitioner, upon the facts of the case.

[4] A writ of habeas corpus may be properly granted

"when the evidence produced before such (immigrant) official, and upon which he assumes to act, is wholly uncontradicted, and shows beyond any room for dispute or doubt that the case in any view is beyond the statutes and not covered or provided for by them." *Ex parte Petterson,* 166 Fed. 536, 539; *Ex parte Watchorn,* 160 Fed. 1014, 1016; *Ex parte Long Lock,* 173 Fed. 208, 215.

The return was demurred to and an amended return and second amended return were filed, whereupon the petitioner filed a motion that he be discharged. For the reasons and under the considerations above set forth, the motion is granted.

---

*Overruled,* as to the holding that the Immigration Act does not apply to domiciled or resident aliens, *Lapina v. Williams,* 232 U. S. 78.