## IN THE MATTER OF THE APPLICATION OF KUME-KICHI TSUGAWA FOR A WRIT OF HABEAS CORPUS FOR KOZO KAWACHI.

### July 20, 1914.

1. *Immigration—Contract laborer—Labor skilled or unskilled— Salesman:* The words "contract laborers who have been induced . . . to migrate to this country . . . to perform labor . . . of any kind, skilled or unskilled,' in section 2 of the immigration act, do not, under the provisions of subdivision 5 of rule 11 of immigration rules, include salesmen.

2. *Same—Same—Salesman:* An alien applying for admission to the United States, who has been solicited to come by offers of employment as a salesman, is not a "contract laborer" and may not be denied admission as such, within the provisions of section 2 of the immigration act.

3. *Habeas Corpus—Jurisdiction:* The findings of the board of special inquiry created a situation under which an applicant for admission was entitled to land; the board, however, denied such right, thus raising a question of law whereby jurisdiction was conferred on this court under an application for a writ of habeas corpus.

*Habeas Corpus:*   Hearing on return to writ.

*Bitting & Ozawa* for petitioner.
*Jeff McCarn,* U. S. District Attorney, for respondent.

DOLE, J.   A writ of habeas corpus was issued in this case upon the filing of the petition therefor.

[1] [2] It appears from the record of the proceedings before the board of special inquiry that Kozo Kawachi came to Honolulu from Japan at the suggestion of Iwahara, a local merchant and a connection by marriage, to work in the store of the latter as bookkeeper and salesman.

The board of special inquiry ruled that *salesmen* came within the description of persons excluded under section 2 of the immigration act.   The words of the act considered as applicable, referring to classes of aliens to be excluded, are as follows:

. . . . "persons hereinafter called contract laborers who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements . . . to perform labor in this country of any kind, skilled or unskilled; . . . And provided further, that the provisions of this law applicable to contract labor shall not be held to exclude professional actors, artists, lecturers, singers, ministers of any religious denomination, professors for colleges or seminaries, persons belonging to any recognized learned profession, or persons employed strictly as personal or domestic servants."

The commissioner general of immigration is required by the act, section 22, to establish such rules and regulations not inconsistent with law as he shall deem best calculated for carrying out the provisions of the act.   Such rules, so established, have the force of law.   *United States v. Sibray,* 178 Fed. 144, 147.

We find in subdivision 5 of rule 11 of immigration rules, so established, referring to the President's proclamation of February 24, 1913, excluding alien laborers, skilled and

unskilled, who have passports to any other country than the continental Territories of the United States, the following:

"For practical administrative purposes, the term 'laborer, skilled and unskilled,' within the meaning of the Executive order of February 24, 1913, shall be taken to refer primarily to persons whose work is essentially physical, or, at least, manual, as farm laborers, street laborers, factory hands, contractors' men, stablemen, freight handlers, stevedores, miners, and the like; and to persons whose work is less physical, but still manual, and who may be highly skilled as carpenters, stonemasons, tile setters, painters, blacksmiths, mechanics, tailors, printers, and the like; but shall not be taken to refer to persons whose work is neither distinctly manual nor mechanical, but rather professional, artistic, mercantile, or clerical, as pharmacists, draftsmen, photographers, designers, salesmen, bookkeepers, stenographers, copyists, and the like."

This is a construction of the meaning of the words "laborers, skilled and unskilled," in the President's proclamation, and if applicable to the words quoted from the immigration act, would justify the admission of an alien bookkeeper and salesman who should come under the inducement of offers of employment. Do they so apply? The introductory note to the immigration rules of November 15, 1911, has the following:

"The act entitled 'An act to regulate the immigration of aliens into the United States,' approved February 20, 1907, is the immigration act or law referred to in the following (revised) rules."

The words "within the meaning of the executive order of February 24, 1913," appearing in the second and third lines of subdivision 5 of rule 11, do not appear to limit the application of the construction of the words "laborer, skilled and unskilled," to cases arising under such order. The construction may and should be adopted in all cases within the scope of the expression "for practical and administrative purposes", where the words appear as they do in

this case, especially as such construction is supported by or is in line with Federal precedents.

"A laborer in the sense of this statute and this treaty (act of May 6, 1882, an act to execute certain treaty stipulations relating to Chinese, 22 Stat. 58) is one that hires himself out, or is hired out, to do physical toil." *In the matter of Yee Hip,* cited in *In re Ho King,* 14 Fed. 724, 725; *Church of the Holy Trinity v. United States,* 143 U. S. 457; *United States v. Laws,* 163 U. S. 258; 27 Ops. Atty. Gen. 383 (*McNair* case).

The board of special inquiry finds that the employment of Kozo Kawachi, if allowed to land, "will undoubtedly be that of salesman, and perhaps that of bookkeeper", and yet decides to deny him admission on the ground that he is a contract laborer within the meaning of the immigration act, and also that he has been assisted to come with the money of another and has not shown that he does not belong to one of the excluded classes.

[3] Here a question of law is raised, which gives the court jurisdiction, if the ruling of the board of special inquiry thereon is wrong.

"It is of course well settled by abundant authority that the writ of habeas corpus cannot be employed to perform the function of a writ of error or an appeal. There are, however, several recent decisions of the Supreme Court holding that the courts of the United States have jurisdiction to grant relief to a party aggrieved by any action by the head or one of the subordinate officials of a department, when the evidence adduced before such official, and upon which he assumes to act, is wholly uncontradicted, and shows beyond any room for dispute or doubt that the case in any view is beyond the statutes, and not covered or provided for by them." *Ex parte Petterson,* 166 Fed. 536, 539; *Ex parte Watchorn,* 160 Fed. 1014, 1016; *Ex parte Long Lock,* 173 Fed. 208, 215.

The board finds that Kozo Kawachi will work as a salesman and perhaps as a bookkeeper, if admitted. The evidence supports this finding, as it appears that he had

worked for one year in his uncle's store, in Japan, in which electrical goods were handled. Under the considerations set forth above, it being established that Kozo Kawachi is an applicant for permission to land, as a salesman, it follows that he is not within the excluded classes described in section 2 of the immigration act, and the board and the Secretary of Labor had no jurisdiction to detain and deport him "by deciding the mere question of law to the contrary." *Gonzales v. Williams,* 192 U. S. 1, 15. He is, therefore, entitled to his discharge, and it is so ordered.